# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

JUANITA MURRAY,                          *15-CV-3191 (RRM)*


                              Plaintiff,

       -vs-

NEW YORK CITY BOARD OF EDUCATION; ROBERT
MERCEDES; SUSAN CARR LAGOMARSINI,


                              Defendant.

---

## *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint*

---

GLASS KRAKOWER LLP
Attorneys for Plaintiff
100 Church Street, Suite 800
New York, NY 10007
Tel.: (212) 537-6859


To: Justin Reiter
New York City Law Department
100 Church Street
New York, NY 10007
(212)-356-3580

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL ALLEGATIONS.................................................................... 2

ARGUMENT:

POINT I

THE SECOND AMENDED COMPLAINT HAS PLED MORE THAN
ADEQUATE VALID RACE AND AGE DISCRIMINATION CLAIMS
UNDER TITLE VII AND THE ADEA ..................................................... 7

    A. STANDARD OF LAW.................................................................. 7

    B. PLAINTIFF HAS STATED VALID DISCRIMINATION
       CLAIMS BASED ON RACE AND AGE UNDER TITLE VII ............... 7

    C. PLAINTIFF HAS STATED VALID RETALIATION CLAIMS
       UNDER TITLE VII AND THE ADEA BASED ON MAKING
       COMPLAINTS AGAINST HER ADMINISTRATORS BASED
       ON RACE AND AGE DISCRIMINATION ........................................... 11

POINT II

THE SECOND AMENDED COMPLAINT HAS PLED MORE THAN
ADEQUATE VALID RACE DISCRIMINATION AND RETALIATION
CLAIMS UNDER 42 USC SECTION 1981 ............................................. 12

POINT III

THE SECOND AMENDED COMPLAINT HAS PLED MORE THAN
ADEQUATE VALID RACE AND AGE DISCRIMINATION CLAIMS
UNDER THE NEW YORK STATE AND NEW YORK CITY HUMAN
RIGHTS LAW..................................................................................... 13

POINT IV

THE SECOND AMENDED COMPLAINT IS NOT BARRED BY TIMING NOR BY THE DOCTRINE OF COLLATERAL ESTOPPEL .............................. 13

    A. PLAINTIFF TIMELY FILED HER COMPLAINT WITHIN 90 DAYS OF HER RECEIPT OF THE RIGHT TO SUE LETTER ........... 13

    B. PLAINTIFF'S COMPLAINT IS NOT BARRED UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL ....................................... 15

CONCLUSION ....................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

<u>Statutes and rules:</u>

*Federal Age Discrimination in Employment Act (ADEA)*...........................1

*Title VII of the Civil Rights Act of 1964*......................................................1

*42 U.S.C. § 1981* .........................................................................................1

<u>Cases:</u>

*Anderson v. City of N.Y.*, 2017 U.S. Dist. LEXIS 8358, at \*26
(SDNY Jan. 19, 2017, No. 1:16-cv-01051 [GBD] [KHP]) .........................10

*Browne v. City Univ. of New York*, 419 F.Supp.2d 315, 322
(E.D.N.Y. 2005), *aff'd sub nom., Browne v. Queen's Coll. City
Univ. of New York*, 202 F. App'x 423 (2d Cir. 2006)..................................8

*Burlington Northern & Santa Fe Railway v. White,*
543 U.S. 53 (2006) .....................................................................................11

*Collins v. City of New York,* 156 F.Supp.3d 448, 460
(S.D.N.Y. 2016)...........................................................................................13

*Craig v. Dept. of Health, Ed. And Welfare,* 581 F.2d 189 (1978)............14

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720
(2d Cir. 2010) .............................................................................................11

*Giove v City of NY*, 2018 US Dist. LEXIS 18909 [E.D.N.Y. Feb. 5, 2018,
No. 15-CV-02998 (PKC) (VMS)].................................................................16

*Giscombe v. NYCDOE*, 2013 WL 829127, at *7
(S.D.N.Y. Feb. 28, 2013) ............................................................ 12

*Glass v. Bemis Co., Inc.,* 22 F.Supp.2d 1063 (D. Neb. 1998), *citing*
*Brooks v. Ferguson-Florissant School Dist.,* 113 F.Supp.3d 903, 904 (8th
Cir. 1997) .................................................................................. 14

*Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ................... 7

*Hausdorf v. NYCDOE*, 17 CV 2115 (PAE)(SN)
(S.D.N.Y. 1/25/18) ....................................................................... 2

*Herling v, New York City Dep't of Educ.*, 13-CV-5287, NYLJ
1202654297747, at *11 (E.D.N.Y. April 22, 2014) .................................. 8

*Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed. Appx. 413,
2011 U.S. App. LEXIS 4626 at *5 .................................................... 7

*Matter of Kolmel v. City of New York,* 88 A.D.3d 527
(1st Dep't 2011) .......................................................................... 6

*Richardson v. New York State Dep't of Correctional Serv.*,
180 F.3d 426, 446 (2d Cir. 1999) *(relying on Crady v. Liberty*
*Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)) ................. 8

*Sank v. City Univ. of New York*, 10-CV-4975, 2011 WL 5120668,
at *11 (S.D.N.Y. Oct. 28, 2011) ...................................................... 9

*Sealy v. Hertz Corp.*, 688 F. Supp. 2d 247, 258 (S.D.N.Y. 2009) .............. 9

*Thomas v. KATV Channel 7*, 692 F.2d 548, 550 (1982) *cert. denied,* 460 U.S. 1039 (1983) ................................................................................ 14

*Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) ...................................................................................... 8

*Webb v. American Red Cross*, 652 F. Supp. 917 (D. Neb. 1986) ............. 14

*White v Roosevelt Union Free Sch. Dist. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 210480 [E.D.N.Y. Dec. 20, 2017, No. 15-CV-1035 (JS) (SIL)] ..................................................................................... 2

*Williams v. Board of Education-City of Buffalo*, 2008 WL 2946003 (W.D.N.Y. 2008) ........................................................................... 13

*Williams v. Regus Mgt. Group, LLC*, 836 F. Supp. 2d 159 (S.D.N.Y. 2011), 2011 U.S. Dist. LEXIS 140287, at *8 ........................... 9

*Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d. Cir. 2005) ................ 7

*Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) ................................................................................ 11

*Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) ......................................................................................... 9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JUANITA MURRAY

                       Plaintiff,

      -against-

                                                15 CV 3191 (RRM) (ST)

NEW YORK CITY BOARD OF EDUCATION;
ROBERT MERCEDES, SUSAN CARR
LAGOMARSINI,

                       Defendants.

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff former NYCDOE school social worker Juanita Murray submits this memorandum of law in response to Defendants' motion to dismiss the second amended complaint in this action. This action was commenced pursuant to the federal Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. Section 1981 for discrimination and retaliation based on Plaintiff's race/color (black). Defendants' motion is premature at this juncture and should be denied, as Plaintiff has stated a valid claim of discrimination and retaliation under the ADEA and Title VII and 42 U.S.C. Section 1981. Defendants' motion has reached far beyond what is appropriate for a motion to dismiss, and motions of this type against teachers have been routinely denied at this early stage of litigation.

1

*See Hausdorf v. NYCDOE* 2018 US Dist. LEXIS 13330 [S.D.N.Y. Jan. 25, 2018, No. 17-CV-2115 (PAE)(SN)].*); White v Roosevelt Union Free Sch. Dist. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 210480 [E.D.N.Y. Dec. 20, 2017, No. 15-CV-1035 (JS) (SIL)]. Therefore, Defendants' motion to dismiss should be denied, and this matter should be promptly scheduled for pretrial discovery and an eventual trial.

If the Court is inclined to find that any further factual pleadings are necessary before proceeding to discovery, Plaintiff asks for leave to file a third amended complaint.

## FACTUAL ALLEGATIONS

Plaintiff respectfully refers to the pleadings of her Second Amended Complaint for a full and complete recitation of the facts of this matter which are summarized below.

Plaintiff was employed as a social worker with the New York City Department of Education (NYCDOE) since on or about 1992 and was working at Middle School 390X in September 2003 under Principal Robert Mercedes until she retired from the NYCDOE in September 2017. Second Amended Complaint ¶ 8. Plaintiff is of African American race and is presently 55 years old. Id. ¶ 9.

Principal Mercedes rated Plaintiff's performance consistently Satisfactory from 2004 through June 2010. Id. ¶ 11. As Plaintiff began approaching retirement age, Principal Mercedes suddenly began rating Plaintiff Unsatisfactory in her annual evaluations for the school years ending in June 2011, June 2012 and June 2013. Id. ¶ 12. Upon information and belief, Principal Mercedes set out to target six veteran, and costly, non-Hispanic staff members. He ultimately succeeded in having five of the six staff members removed from their positions through trumped up charges, forced retirement, or forced medical leave. Id. ¶ 13.

2

In September 2012, Plaintiff was given a corrective action plan by Principal Mercedes, under the guise that the administration was providing support, which was geared towards in-classroom *teachers*, even though Plaintiff is a social worker and Principal Mercedes had no experience supervising social workers. Id. ¶ 14.  Plaintiff sat in several staff meetings on or about December 2012 and January 2013 where Principal Mercedes stated that senior staff was "too expensive" and he would reach out to NYCDOE legal to obtain assistance on having those staff members removed. Id. ¶ 16.

In January 2013, Plaintiff suddenly had her individual counseling sessions removed from her caseload by Principal Mercedes and instead given to Community Based Organizations. Id. ¶ 17. In January 2013, Plaintiff was in fact removed from her room and her entire caseload of students dispersed among other staff. Id. ¶ 18. Instead of performing the necessary social work, as of January 2013 until the end of the school year, Principal Mercedes assigned her out of license and made her circulate or lap the cafeteria twenty times and monitor students during lunch while also not allowing Plaintiff to use the restroom. Id. ¶ 19.

In February 2013, at a Step 2 union grievance meeting, Principal Mercedes was told by NYCDOE grievance representatives that Social Workers were not to be ordered to work cafeteria duty; however, Principal Mercedes continued violating Plaintiff's contractual rights and ordering her to walk the cafeteria. Id. ¶ 21.

In March 2013, Plaintiff filed age and race discrimination allegations against Principal Mercedes in a complaint with the NYCDOE Office of Equal Opportunity office. In the complaint, Plaintiff alleged that Principal Mercedes favors younger and Hispanic employees over older and non-Hispanic employees. For example, Principal Mercedes received notification that

he had to reduce his staff because of budget cuts, but only encouraged non-Hispanic employees to leave his school. Id. ¶ 22.

Shortly following her OEO complaint filing, Principal Mercedes retaliated against Plaintiff by fabricating allegations to the NYC Special Commissioner of Investigation (SCI)'s office that Plaintiff did not follow "Respect for All" protocol for alleged cyberbullying incidents between students. Guidance counselor Susan Carr Lagomarsini falsely alleged that Plaintiff "took no action" regarding the cyberbullying incidents. Id. ¶ 23. However, SCI substantiated the allegation nonetheless and Plaintiff received a disciplinary letter, which ultimately became the subject of Section 3020-a charges against her. When Plaintiff requested training for the "Respect for All" protocol, Principal Mercedes denied her such training. This is a mandated training all school staff were supposed to receive. Id. ¶ 24.

In September 2013, Plaintiff continued being assigned out of license duties. Id. ¶ 25. Plaintiff was then served disciplinary 3020-a termination charges by Defendant NYCDOE in October 2013. She was reassigned to the office to shred paper, including school bell schedules, that were not confidential. Id. ¶ 26. While shredding paper, the machine jammed, and clippings fell on the floor. In response to this, Principal Mercedes contacted School Safety to remove Plaintiff from the building. Id. ¶ 27.

On October 4, 2013, Principal Mercedes requested that Plaintiff undergo a psychiatric evaluation stating paper shreddings were on the floor. A NYCDOE doctor immediately found Plaintiff "fit" when Plaintiff went to the evaluation. Id. ¶ 27. Plaintiff was subsequently reassigned to an unsanitary basement storage room and directed to clean it. Because there was a federal government shutdown at the time, Plaintiff could not contact the federal Occupational Safety and Health Administration (OSHA) and instead contacted the NYS Department of Labor

4

(DOL) and filed a complaint against the NYCDOE. Plaintiff was also directed to clean out other rooms, including the library. Plaintiff was also given the assignment to pack up another room with another African American teacher, Linda White, who was also a veteran teacher. Id. ¶ 29.

After Plaintiff's complaint to the NYSDOL, in November 2013, she was moved to Public School 37 in the Bronx for the remainder of the 2013-14 school year. Id. ¶ 30.  On or about May 1, 2014, Plaintiff filed her first charge alleging race and age discrimination and retaliation with the U.S. Equal Employment Opportunity Commission (EEOC). Id. ¶ 28.

In September 2014, Plaintiff was reassigned back to work under Principal Robert Mercedes at MS 390. Upon information and belief, Plaintiff was assigned back to Principal Mercedes for additional abuse and harassment. Plaintiff was assigned to monitor attendance, security doors, and halls. Id. ¶ 31.  On September 23, 2014, Plaintiff was verbally assaulted with racial epithets by a staff member, close to Principal Mercedes, who called her "Nigger" repeatedly and waved a yardstick at her. Plaintiff complained to Principal Mercedes in an email about this racial harassment, and instead she was summoned to a disciplinary meeting by Principal Mercedes for alleged "deformation [sic] of character" of the other staff member, as stated in the principal's letter. Id. ¶ 32.

Principal Mercedes lied during the disciplinary conference and Plaintiff's subsequent 3020-a hearing, stating he never saw Plaintiff's email that she was verbally assaulted by the same staff member who called her a "nigger." Plaintiff, however, sent the email with "Read Receipt", which showed Principal Mercedes opened and read it on September 23, 2014 at 9:58 PM the night before he summoned her to the disciplinary conference.  The other staff member did not get disciplined nor even moved away from her by school administration despite making racially derogatory comments to Plaintiff. Id. ¶ 33.

In February 2015, Plaintiff's 3020-a termination hearings began and ended in June 2015. Id. ¶ 34.  To further harass Plaintiff, Principal Mercedes illegally docked her pay for seventeen days, which greatly reduced her first paycheck in July 2015.  Through the grievance process, Plaintiff eventually was able to regain the days back, but only after ten months had passed. Sixteen of the days were medically documented. Id. ¶ 35.

While Plaintiff was performing security detail in the gymnasium, in September 2015, she was hit with a ball and filed a Line of Duty Injury (LODI) report. Principal Mercedes ignored her paperwork regarding the LODI injury and did not file the necessary paperwork. Id. ¶ 36.

Before Plaintiff's Section 3020-a case was decided, in a decision dated September 22, 2015, based on Plaintiff's appeal of her 2010-11 Unsatisfactory rating,  in an Article 78 proceeding brought by her union UFT on her behalf, the Appellate Division, First Department, reversed Plaintiff's 2010-11 Unsatisfactory year end rating issued by Defendant Mercedes as *irrational*, holding, "In short, the complete absence of constructive criticism and warnings during the entire school year, compounded by the lack of a formal observation and accompanying feedback during the school year, undermined the integrity and fairness of the process (*Matter of Kolmel*, 88 AD3d at 529). Second Amended Complaint ¶ 40. Accordingly, the judgment should be reversed, and the petition granted to the extent of annulling the U-rating." In November 2015, the hearing officer assigned to adjudicate her 3020-a disciplinary hearing, issued a decision fining Plaintiff $7,500, but refused the NYCDOE's attempt to terminate Plaintiff's employment. Id. ¶ 37.

Plaintiff was thereafter assigned outside the school and compelled to join the Absent Teacher Reserve (ATR) pool to be rotated around different schools in the Bronx. From November 2015 to June 2017, Plaintiff, a licensed Social Worker, was assigned all kinds of

different jobs *except* being a "social worker" for students who needed her.  She was told to cover lunch duty, watch students who did not have immunizations and were not allowed in class, assigned counseling caseload without the parents' consent, and assigned secretarial assignments and breakfast duty. Id. ¶ 39.  Plaintiff filed 3 separate EEOC charges and received right to sue letters from the EEOC dated January 13, 2015, June 10, 2016, and August 11, 2016. Id. ¶ 41.

## ARGUMENT

### POINT I

### THE SECOND AMENDED COMPLAINT HAS PLED MORE THAN ADEQUATE VALID RACE AND AGE DISCRIMINATION CLAIMS UNDER TITLE VII AND THE ADEA

A.    **Standard of Law**

In order to establish a *prima facie* case of discrimination under the Title VII of the Civil Rights Act of 1964 or the ADEA for discrimination based on her race/color and age, a plaintiff must show that he (1) falls within the protected group; (2) he was performing her duties satisfactorily; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *See Graham Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed. Appx. 413, 2011 U.S. App. LEXIS 4626 at *5. Though a plaintiff bears the burden of producing evidence sufficient to support a prima facie case of discrimination, such evidence need be no more than "minimal" or "de minimis." *See, e.g., Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d. Cir. 2005).   A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination that shifts the burden of

production to the defendant, who must proffer a "legitimate, nondiscriminatory reason" for the challenged employment action. *See Woodman*, 411 F.3d at 76.

**B.      Plaintiff Has Stated Valid Discrimination Claims Based on Race and Age under Title VII**

Defendants do not contest that Plaintiff was within a protected group based on race (Black) and age, but challenge Plaintiff's claim that she suffered an adverse employment action that occurred under circumstances giving rise to an inference of discrimination.  Plaintiff clearly meets her burden for both these elements to survive a motion to dismiss as this early stage of this litigation.

*1.   Plaintiff has indeed suffered multiple materially adverse actions*

A plaintiff sustains an adverse employment action if she endures a "materially adverse change" in the terms and conditions of employment.  *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (relying on *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).  A "materially adverse" change might be indicated by a "material loss of benefits" or other indices unique to a particular situation. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). Plaintiff has suffered a material loss of benefits. Specifically, she has:

1) Suffered lost wages as a result of being fined after the 3020-a hearing initiated by Principal Mercedes based on discrimination and retaliation against her;

2) Lost opportunity to make overtime since becoming a rotating Absent Teacher Reserve after her 3020-a disciplinary proceeding;

3) Received an Unsatisfactory overall rating, the lowest of her career.

Regarding Plaintiff's annual rating, it is widely accepted that a negative evaluation or reprimand is considered an adverse employment action if it is accompanied by an adverse result

8

such as "demotion, diminution of wages, or other tangible loss." *Browne v. City Univ. of New York*, 419 F.Supp.2d 315, 322 (E.D.N.Y. 2005), *aff'd sub nom.*, *Browne v. Queens Coll. City Univ. of New York*, 202 F. App'x 423 (2d Cir. 2006) (collecting cases); *see also Herling v, New York City Dep't of Educ.*, 13-CV-5287, NYLJ 1202654297747, at *11 (E.D.N.Y. April 22, 2014) (holding that the U rating plaintiff received for the 2009-10 school year constituted an adverse employment action because it was accompanied by a pay-freeze and served to bar plaintiff from earning per-session wages).   As such, because Plaintiff received an Unsatisfactory rating, resulting in her being unable to work per session, she has plainly met her burden of establishing adverse actions and economic loss for the purpose of an adverse action under Title VII and the ADEA.

Additionally, as to the other allegations of adverse employment action, it is important to note that courts have held that no type of alleged adverse employment action should be outright dismissed without exploration as to whether it qualifies as a true adverse employment action. *See Sealy v. Hertz Corp.*, 688 F. Supp. 2d 247, 258 (S.D.N.Y. 2009) ("[I]n the retaliation context, 'no 'type of challenged conduct [may] be categorically rejected as nonactionable' under the [NYCHRL].'") (internal citations omitted).

### 2. *Plaintiff has alleged facts showing discriminatory intent based on race and age*

The fourth prong of establishing a prima facie case of discrimination—that the circumstances surrounding an adverse employment action give rise to an inference of discrimination—is satisfied "if a member of a protected class was treated differently than a worker who was not a member of that protected class." *See Williams*, 2011 U.S. Dist. LEXIS 140287, at *8; *Sank v. City Univ. of New York*, 10-CV-4975, 2011 WL 5120668, at *11

(S.D.N.Y. Oct. 28, 2011); *see also Zimmerman v. Associates First Capital Corp.,* 251 F.3d 376, 381 (2d Cir. 2001).

Throughout her Second Amended Complaint, Plaintiff has alleged a plethora of situations in which she was treated differently than other, younger and non-Hispanic employees. For example, Principal Mercedes set out to target six veteran, and costly, non-Hispanic staff members. He ultimately succeeded in having five of the six staff members removed from their positions through trumped up charges, forced retirement, or forced medical leave. Again, all employees were non-Hispanic and veteran. Second Amended Complaint ¶ 3. This was the same group Principal Mercedes encouraged to leave the school when the school's budget was cut.

In addition, Plaintiff has pled that co-worker made racist and remarks about her, that were not addressed by the DOE's OEO office or her school administration. Id. ¶ 6. Instead, Principal Mercedes retaliated against Plaintiff with disciplinary letters and a 3020-a termination hearing. Under these circumstances, a clear inference of race and age based discrimination and retaliation is apparent, and the premature motion to dismiss should be denied.

   3. *Plaintiff is not obligated to respond to Defendants' purported legitimate, nondiscriminatory reasons in a motion to dismiss*

Defendants boldly contend that Plaintiff's claims must be dismissed unless she sets forth factual allegations showing that Defendants' legitimate nondiscriminatory reasons were pre-textual. At this stage in litigation, Defendants have prematurely submitted a motion to dismiss. They have not submitted an Answer, and no discovery has been conducted. As such, they have not established any legitimate, non-discriminatory reasons for Plaintiff's adverse actions. Indeed, district courts have rejected similar arguments made in other cases. *See Anderson v. City of N.Y.,* 2017 U.S. Dist. LEXIS 8358, at *26 (SDNY Jan. 19, 2017, No. 1:16-cv-01051 [GBD] [KHP])

(holding that at the pleading stage, a plaintiff does not need to provide discrimination, allege facts establishing every element of a *prima facie* case, or demonstrate that Defendants' legitimate nondiscriminatory reasons were pretextual); *Hausdorf, supra; White, supra* (motions to dismiss in retaliation and discrimination charges denied).

**C.    Plaintiff Has Stated Valid Retaliation Claims under Title VII and the ADEA based on Making Complaints Against her Administrators based on Race and Age Discrimination.**

For a plaintiff to state a claim for retaliation, she must allege that (1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). To qualify as an adverse employment action for a retaliation claim, the act must be one "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway v. White*, 543 U.S. 53 (2006).

Furthermore, the Second Circuit has found that "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to [a] classroom on [the] fifth floor which aggravated teacher's physical disabilities" may qualify as adverse employment actions for purposes of a retaliation claim. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) (internal quotations and citations omitted).

Plaintiff's negative overall rating for the school years ending in June 2011, June 2012 and June 2013 and the DOE's decision to bring 3020-a termination charges initiated by Principal

Mercedes occurred *after* she filed her OEO discrimination complaint with the DOE. Plaintiff filed the OEO complaint against Principal Mercedes, and in turn, he retaliated by subjecting her to disciplinary conferences, causing him to recommend her for an unwarranted involuntary medical examination to DOE medical for which she was found fit, and ultimately triggering an investigation against her that led to Section 3020-a disciplinary charges against her and her permanent removal from his school. Plaintiff has plainly alleged that these adverse actions occurred in retaliation for her protected activity, caused by the very same actors who she previously alleged were discriminating against her.

To the extent that Defendants argue that legitimate, nondiscriminatory reasons exist for the adverse actions, they have once again conflated the standards for a motion to dismiss and motion for summary judgment. Defendants have failed to assert any nondiscriminatory reasons as they have not answered the complaint or provided any discovery.

## POINT II

### THE SECOND AMENDED COMPLAINT HAS PLED MORE THAN ADEQUATE VALID RACE DISCRIMINATION AND RETALIATION CLAIMS UNDER 42 USC SECTION 1981

Plaintiff's Section 1981 claims also should survive Defendants' motion to dismiss for the reasons stated in the *White* case, *supra*. The challenged acts were in fact performed pursuant to municipal policy and custom, in that officials with policymaking authority took actions or made specific decisions which caused the alleged violation of Plaintiff's constitutional rights. *See Giscombe v. NYCDOE*, 2013 WL 829127, at *7 (S.D.N.Y. Feb. 28, 2013). Here, the school principal Mercedes acted as a final policymaker and had final decision-making authority over those decisions. In addition, he himself endorsed his subordinate Susan Carr Lagomarsini's racial discrimination against Plaintiff, by allowing her to retaliate against Plaintiff with impunity

12

after Plaintiff reported his discriminatory actions.   Both Principal Mercedes and Susan Carr Lagomarsini triggered the DOE's Section 3020-a disciplinary charges which drove Plaintiff from their school in a completely retaliatory fashion against Plaintiff.   Under these circumstances, their conduct clearly can be attributed to the DOE school district, and provides a more than adequate basis to proceed on 42 USC Section 1981 claims in this action.   *See Williams v. Board of Education-City of Buffalo*, 2008 WL 2946003 (W.D.N.Y. 2008) (finding municipal liability when harassment was directly committed by the principal).

## POINT III

### THE SECOND AMENDED COMPLAINT HAS PLED MORE THAN ADEQUATE VALID RACE AND AGE DISCRIMINATION CLAIMS UNDER THE NEW YORK STATE AND NEW YORK CITY HUMAN RIGHTS LAW

As very similar standards are applied based on race and age discrimination and retaliation claims under state and city law to Plaintiff's claims under federal law, these claims should proceed at this stage based on pendent jurisdiction as well.   To the extent that Defendants claim a notice of claim is required for these claims, the Court should consider that Defendants were on notice through Plaintiff's official OEO complaint filing with the DOE as early as March 2013. In addition, recent case law suggests that a notice of claim is not required to be filed against a school principal or assistant principal as they are not officials of the District for purposes of a notice of claim.   *See Collins v City of NY*, 156 F.Supp.3d 448, 460 (SDNY 2016) (citations omitted).

## POINT IV

### THE SECOND AMENDED COMPLAINT IS NOT BARRED BY TIMING NOR BY THE DOCTRINE OF COLLATERAL ESTOPPEL.

13

**A. Plaintiff Timely Filed her Complaint within 90 Days of Her Receipt of the Right to Sue Letter.**

In their motion to dismiss, Defendants claim that the Plaintiff was untimely. when she filed this lawsuit. Defendants claim that Plaintiff initially stated, in her Amended Complaint, that she received her right to sue letter on "January 13, 2015."

As set forth in her accompanying sworn declaration, Plaintiff had filed her amended complaint *pro se* and simply looked at the date on the letter itself in listing the date of receipt of the right to sue letter.  Plaintiff was consistent with this error by giving the date written on each of the three right to sue letters in her complaint. Plaintiff obviously did not *receive* her right to sue letter from the EEOC on January 13, 2015, as it was dated that day and sent by regular mail. Plaintiff recalls actually receiving the letter in her home mailbox after the Martin Luther King holiday, which in the year 2015 fell on Monday, January 19th. Since no mail was delivered on Monday, Plaintiff must have received the letter on Tuesday January 20th, *or later*. Plaintiff filed her Summons with Notice in New York State Supreme Court, Queens County, on April 17, 2015, within 90 days of January 20th.

The Eighth Circuit has held where a claimant is mailed a right-to-sue letter by regular mail, the date of actual receipt is presumed to be three days from the date it was mailed and the 90-day statute of limitations begins to run at that time. *See Glass v. Bemis Co., Inc.,* 22 F.Supp.2d 1063, 1066 (D.Neb. 1998) (citing *Brooks v. Ferguson-Florissant School Dist.*, 113 F.3d 903, 904 (8th Cir. 1997)). However, the Eighth Circuit held that a Title VII claimant must acknowledge receipt of a certified right-to-sue letter before the 90-day statute of limitations begins to run.  *See Craig v. Dept. of Health, Ed. and Welfare*, 581 F.2d 189 (1978); *Thomas v.*

*KATV Channel 7*, 692 F.2d 548, 550 (1982), *cert. denied,* 460 U.S. 1039 (1983); *see also Webb v. American Red Cross*, 652 F. Supp. 917 (D. Neb. 1986).

To further support the reasonable claim that a letter dated January 13, 2018, sent from a Manhattan, NY address, can take more than three days to arrive at the Plaintiff's address in Shrub Oak, New York, Plaintiff submits the following below and in the attached Plaintiff's declaration accompanying this response:

   a) Letter from NYC Employee Benefit Program dated January 22, 2018, and postmarked January 24, 2018 was not received until January 29, 2018. See Exhibit 1 annexed to the Declaration of Juanita Murray, dated 4/23/18.

   b) Using the United States Post Office's estimated cost and delivery calculator, using dates that would involve a weekend and the zip codes for the NYC EEOC Office and the Plaintiff's home address, the results furnishes a 3 day delivery time estimate for First Class mail. This does not factor in the Martin Luther King Jr. Holiday, the fact that it was sent standard mail (First Class mail arrives faster), and assumes the right to sue letter was mailed the date it was written.

Given the information provided, it is more than plausible to believe that the Plaintiff was within the 90 day statute of limitations upon filing, and Defendants' time bar arguments for her ADEA and Title VII claims should be dismissed as without merit.

**B. Plaintiff's complaint is not barred under the doctrine of collateral estoppel.**

Prior to his 3020-a hearing, Plaintiff speech teacher Jeffrey Giove filed a discrimination complaint in the EDNY.  In a motion brought by the DOE just seven weeks prior to the scheduled trial, the defendants sought to amend their answer to include a claim for collateral estoppel based on a 30-20-a decision which, they claimed, would cause the dismissal of Giove's

15

discrimination claims. Judge Pamela Chen of this Court decided that the DOE's argument was without merit. Judge Chen found that the 3020-a hearing issues were dissimilar, and a passing reference made by the Hearing Officer in his finding did not collaterally estop Giove from maintaining his discrimination lawsuit. The Court ruled that the case should proceed to trial without the defense of collateral estoppel. *See Giove v. City of New York et al.,* 2018 US Dist. LEXIS 18909 [EDNY Feb. 5, 2018, No. 15-CV-02998 (PKC) (VMS)].

In this instant case, Plaintiff's 3020-a hearing decision's focus similarly was not her claims of retaliation and discrimination, and the 3020-a decision should not estop her from moving to trial.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss the complaint in its entirety, order the case to proceed to discovery on all material factual issues, and grant such other and further relief as the Court may deem just and proper.

Dated:      New York New York
            April 23, 2018

                              GLASS KRAKOWER LLP
                              100 Church Street, Suite 800
                              New York, NY 10007
                              (212) 537-6859

                    By:       _____
                              BRYAN D. GLASS, ESQ.

16